**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━

SHELDON COOPER, JR.,

                       Plaintiff,

      v.

A. ANNUCCI, et al.,                                    No. 9:18-CV-762
                                                       (GTS/CFH)

                 Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                                       **OF COUNSEL:**

Sheldon Cooper, Jr.
2020-00914
Orange County Jail
110 Wells Farm Road
Goshen, New York 10924
Plaintiff pro se

Attorney General for the                               KONSTANDINOS D. LERIS, ESQ.
State of New York                                      Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

      Plaintiff pro se Sheldon Cooper, Jr. ("plaintiff"), an inmate who was, at all relevant

times, in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28
U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

defendants Greene Correctional Facility ("Greene CF") Sergeant ("Sgt.") David DeGraff ("Sgt. DeGraff"); Cayuga Correctional Facility ("Cayuga CF") Lieutenant ("Lt.") Daniel Walawender ("Lt. Walawender"); Cayuga CF Sergeants Gregg Smith ("Sgt. Smith"); and Christopher Seymour ("Sgt. Seymour"); Cayuga CF Correction Officers ("C.O.") Jaci Stanton ("C.O. Stanton"); C.O. Kevin Cashin ("C.O. Cashin"); C.O. Kristopher Corey ("C.O. Corey"); C.O. Scott Payne ("C.O. Payne"); and C.O. Joanne Withers ("C.O. Withers"); and Cayuga CF nurse Kim Randolph ("Nurse Randolph"), violated his constitutional rights under the First and Eighth Amendments.  See Dkt. No. 12 ("Amend. Compl.").

Following initial review of plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. 1915A(b), Chief U.S. District Judge Glenn T. Suddaby held that the following claims survived: (1) plaintiff's Eighth Amendment excessive force and failure to intervene claims against Sgt. Smith and C.O. Cashin; and (2) plaintiff's First Amendment retaliation claims against Sgt. DeGraff, Sgt. Smith, Nurse Randolph, C.O. Payne, C.O. Withers, C.O. Corey, Sgt. Seymour, Lt. Walawender,[2] C.O. Stanton, and C.O. Cashin.  See Dkt. No. 14 at 3.[3]  The Court previously dismissed plaintiff's remaining claims and additional defendants without prejudice on initial review of plaintiff's original complaint, see Dkt. No. 7 at 48, and plaintiff's Amended Complaint set

---

[2]  Plaintiff initially named Cayuga CF Lt. Soto as a defendant in his Amended Complaint.  See Dkt. No. 12 at 6 ¶ 28.  Following the Court's Decision & Order on initial review of plaintiff's Amended Complaint, Lt. Walawender was substituted in place of Lt. Soto as a named defendant in this action, all references to Lt. Soto in the Amended Complaint were deemed to refer to Lt. Walawender, and Lt. Soto was dismissed as a defendant.  See Dkt. Nos. 30, 32.

[3]  Plaintiff's First Amendment retaliation claim against C.O. Christopher Corp ("C.O. Corp.") also survived the Court's initial review of the Amended Complaint.  See Dkt. No. 14 at 3.  However, on November 13, 2019, the Court approved a stipulation and order of partial discontinuance pursuant to Federal Rule of Civil Procedure 41(a), dismissing all claims against C.O. Corp with prejudice from this action.  See Dkt. No. 55.

forth identical factual assertions as in the original complaint except that plaintiff provided the names for certain defendants previously named as John or Jane Does.  See Dkt. No. 14 at 2.

Presently pending before the Court is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56.  See Dkt. No. 84. Despite the Court granting plaintiff a 30-day extension to file a response to defendants' motion, see Dkt. No. 89, plaintiff did not timely file a response and the extended deadline has since expired.  For the reasons that follow, it is recommended that defendants' motion for summary judgment be granted in part.

## I. Background

The facts are reviewed in the light most favorable to plaintiff as the non-moving party.  See subsection III.A., infra.  At all relevant times, plaintiff was an inmate incarcerated first at Greene CF and then at Cayuga CF.

### A. Plaintiff's Factual Assertions and Claims[4]

### 1. Incidents Involving Sgt. DeGraff at Greene CF

Plaintiff states that, on December 8, 2017, Sgt. DeGraff conducted a cell search, during which he "drew a picture of a penis on . . . plaintiff's shower wall with . . . soap and ripped . . . plaintiff's Bible apart and only left behind the cover."  Amen. Compl. at

---

[4] To the extent that plaintiff's exhibits are relevant to the causes of action at issue on the present motion, the Court will consider them as part of the Amended Complaint.  See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." (internal quotation marks and citations omitted)).

14.  On December 13, 2017, plaintiff filed a Prison Rape Elimination Act ("PREA")

complaint with the DOCCS Office of Special Investigations ("OSI") relating to the

December 8, 2017 cell search in which he alleged, among other things, that Sgt.

DeGraff sexually harassed him by drawing a penis on plaintiff's shower wall.  See id.;

Dkt. No. 12-2 at 30.  Plaintiff states that he also filed an inmate grievance against Sgt.

DeGraff based on the December 8, 2017 cell search.  See Amen. Compl. at 14.  Plaintiff

further alleges that, on December 19, 2017, Sgt. DeGraff conducted another cell search

during which he again drew a picture of a penis on plaintiff's shower wall with soap,

threw away the remainder of plaintiff's Bible, and "left behind a puddle of a watery

substance under . . . plaintiff's desk next to the shower . . . which . . . plaintiff and his

[cellmate] determined to be urine, since the shower was off that day."  Id. at 15.  Plaintiff

states that he requested to be removed from his cell and was placed in a holding cell,

which Sgt. DeGraff "approached" and stated, "[y]ou sure you want to do this Cooper?  I

don't think you want to go down that road!"  Id.  Plaintiff states that he and his cellmate

were issued inmate misbehavior reports based on the December 19, 2017 cell search,

for which plaintiff was found guilty at the ensuing disciplinary hearing.  Id. at 15.

However, plaintiff's guilty disposition was "reversed on appeal due to only a paper not

being filled out correctly."  Id.  Liberally construed, the Amended Complaint alleges that

Sgt. DeGraff violated plaintiff's First Amendment rights by issuing him a misbehavior

report in retaliation for plaintiff filing a grievance against Sgt. DeGraff on December 8,

2017.  See Amen. Compl. at 14-15.

## 2. Incidents at Cayuga CF

4

**a. Plaintiff's Placement on Suicide Watch on January 17, 2018: Sgt. Smith, C.O. Cashin, and Nurse Randolph**

On January 2, 2018, plaintiff was transferred from Greene CF to Cayuga CF. See Amen. Compl. at 15.  On January 11, 2018, plaintiff alleges that another inmate informed him that C.O. Stanton, a female correction officer, entered the bathroom plaintiff and another inmate were using and watched plaintiff urinate "for about five seconds." Id. at 16.  Plaintiff filed a PREA complaint against C.O. Stanton on January 11, 2018.  See id.  On January 17, 2018, plaintiff was sent to the medical facilities at Cayuga CF, where he alleges that Sgt. Smith and Nurse Randolph were present.  See id.  Plaintiff states that Sgt. Smith "produced a copy of plaintiff['s] PREA complaint he filed on January 11th." Id.  Plaintiff alleges that Sgt. Smith "began a tirade of threats to . . . [him if [he] did not sign off on the [PREA] complaint." Id.  Plaintiff states that Sgt. Smith and Nurse Randolph "conspired with each other to . . . place . . . plaintiff on suicide watch if he did not sign off on the [PREA] complaint." Id. at 17.  Plaintiff contends that when he refused to drop his PREA complaint against C.O. Stanton, he was handcuffed and escorted to the Cayuga CF Special Housing Unit ("SHU").  See id.

Plaintiff alleges that, upon his arrival at the Cayuga CF SHU, C.O. Cashin "forcefully grabbed the back of [his] neck and stated . . . 'this is the piece of shit who likes to write shit up?'"  Amen. Compl. at 17.  C.O. Cashin then "shoved . . . plaintiff to the door" and "pushed and shoved the plaintiff through the door and all the way to [the] cell" saying plaintiff "likes to write female C.O.'s up for sexual assault." Id.  Once at plaintiff's SHU cell, C.O. Cashin "bang[ed] the plaintiff's head on the window frames [sic] metal mesh wiring three times, and [said] 'I'll fuck you up, you pussy ass nigger!  I wish you would, I'll kill you!" Id. at 18.  Plaintiff states that "Sgt. Smith stood in the doorway"

while C.O. Cashin assaulted him.  Id. at 17.  Plaintiff posits that, following the assault, "the C.O.[]s walked away jesting with each other out loud[,] saying 'he likes to write female C.O.[]s up, saying they sexually assaulted him!'"  Id. at 18.  Plaintiff remained in SHU on suicide watch until January 22, 2018.  See id. at 19.[5]

Liberally construed, plaintiff alleges that Sgt. Smith and Nurse Randolph violated his First Amendment rights by placing him in SHU on suicide watch in retaliation for his refusal to drop the PREA complaint against C.O. Stanton.  See Amen. Compl. at 16-17. Further, plaintiff asserts Eighth Amendment claims for excessive force and failure to intervene against C.O. Cashin and Sgt. Smith, respectively.  See id. at 17.

**b. C.O. Payne and C.O. Withers Refusal to Transfer Plaintiff to Single Bunk Cube**

Plaintiff posits that, between February 22, and April 5, 2018, "C.O. Withers and C.O. Payne who worked . . . inside dorm C-2[] conspired with each other by keeping . . . plaintiff inside a double bunk cube and moving multiple inmates to single bunk cubes before . . . plaintiff," despite the other inmates arriving in the dorm after plaintiff.  Amen. Compl. at 23.  Plaintiff states that placing inmates in single bunk cubes who arrived in dorm C-2 after him violated the Superintendent's rules.  See id.  Affording plaintiff's pro se pleadings the most liberal construction possible, he asserts that C.O. Withers and C.O. Payne violated his First Amendment rights for their alleged refusal to move him to a single bunk cube in retaliation for his filing a PREA complaint against C.O. Stanton. See id. at 19, 23.

---

[5] On January 23, 2018, plaintiff filed an inmate grievance ("Grievance No. CAY-18303-18") in which he asserted his Eighth Amendment excessive force and failure to intervene claims against Sgt. Smith and C.O. Cashin and First Amendment retaliation claim against Sgt. Smith and Nurse Randolph based on the alleged January 17, 2018 incident.  See Dkt. No. 84-13 at 22-27.

### c. Plaintiff's April 5, 2018 Placement in SHU: Lt. Walawender, Sgt. Seymour, and C.O. Corey

On April 5, 2018, C.O. Stanton entered the C-2 dorm where plaintiff was housed. See Amen. Compl. at 24.  Plaintiff retrieved a letter he had received, which stated that his PREA complaints were being investigated.  See id. at 25.  Plaintiff intended "to wait for the area [sergeant] to do a round," so that he could "produce this letter to the [sergeant] and inform the [sergeant] that [he] did not feel safe around [C.O.] Stanton." Id.  Later that day, when Sgt. Seymour came into the C-2 dorm, "plaintiff went up to the C.O.'s desk," where Sgt. Seymour was sitting, "placed [his letter on] the desk," explained the contents of the letter, and stated that he did not feel safe being around C.O. Stanton.  Id.  Sgt. Seymour ordered plaintiff "to step away from the desk," and "[p]laintiff complied."  Id.  Sgt. Seymour then called Lt. Walawender on the phone regarding plaintiff's request, after which Sgt. Seymour informed plaintiff that he could not move plaintiff out of the C-2 dorm.  See id.  After Sgt. Seymour called Lt. Walawender a second time shortly thereafter, "Sgt. Seymour directed C.O. Corey to place . . . plaintiff in handcuffs" and Sgt. Seymour and C.O. Corey escorted plaintiff to SHU.  Id. at 26.  Affording the Amended Complaint a liberal construction, plaintiff alleges that Lt. Walawender, Sgt. Seymour, and C.O. Corey violated his First Amendment rights by placing him in SHU in retaliation for filing a PREA complaint against C.O. Stanton.  See Amen. Compl. at 24-26.

### d. C.O. Stanton's and C.O. Cashin's Inmate Misbehavior Reports

7

On April 6, 2018, plaintiff received an inmate misbehavior report dated April 5, 2018, issued by C.O. Stanton, which cited plaintiff for creating a disturbance and failing to comply with a direct order. See Amen. Compl. at 26; Dkt. No. 12-2 at 68. C.O. Stanton's misbehavior report stated that, on April 5, 2018, plaintiff "charged the officer's desk yelling" to Sgt. Seymour, "I don't want [C.O. Stanton] working this dorm, she can't work this dorm, I feel unsafe and don't know what I will do to her." Dkt. No. 12-2 at 68. The misbehavior report indicated that plaintiff "was given a direct order to step away from the desk at which time he didn't comply," and that plaintiff "forcefully threw down a piece of paper on the officers desk continuing to cause a disruption." Id. Plaintiff "was then removed from the dorm by Sgt. Seymour and C.O. Corey [and] was escorted to SHU." Id. Plaintiff states that he "wrote an inmate grievance on April 5th in connection to C.O. Stanton retaliating against [him]" for filing his PREA complaint against her. Amen. Compl. at 26; see Dkt. No. 12-2 at 72.

Plaintiff also received a misbehavior report from C.O. Cashin dated April 6, 2018, for failing to comply with a direct order, creating a disturbance, and harassment. See Amen. Compl. at 26; Dkt. No. 12-2 at 70. C.O. Cashin's misbehavior report stated that, on April 6, 2018, he "was on duty in SHU, when [he] heard yelling coming from a gallery." Dkt. No. 12-2 at 70. When C.O. Cashin made a round of the gallery, he "observed [plaintiff] yelling from his feed up hatch to" another SHU inmate's cell. Id. C.O. Cashin ordered plaintiff to stop yelling, to which plaintiff replied, "whatever fuck you bitch." Id. C.O. Cashin's misbehavior report cited plaintiff with failing to comply with a direct order, creating a disturbance, and harassment. See id. Plaintiff states that he filed an inmate grievance against C.O. Cashin for "retaliating against [him]." Amen.

Compl. at 26.  Plaintiff attached as an exhibit to his Amended Complaint a handwritten note stating that, "on 4/7/18," he "placed on [his] cell door . . . a grievance to [the Inmate Grievance Office] complaining about [C.O.] Cashin," and inquiring whether the Inmate Grievance Office was in receipt of that complaint.  Dkt. No. 12-2 at 73.  Affording the Amended Complaint a liberal construction, plaintiff alleges that C.O. Stanton and C.O. Cashin violated his First Amendment rights by issuing him false misbehavior reports in retaliation for filing grievances and/or PREA complaints against them.  See Amen. Compl. at 32-34.

### B. Defendants' Motion[6] for Summary Judgment: Arguments and Supporting Evidence

#### 1. Exhaustion of Administrative Remedies[7]

---

[6]  Defendants initially contended that plaintiff failed to exhaust administrative remedies for his First Amendment retaliation and Eighth Amendment excessive force and failure to intervene claims relating to his January 17, 2018 transfer to suicide watch in SHU, as contained in Grievance No. CAY-18303-18.  See Dkt. No. 84-15 at 20.  Defendants pointed out that plaintiff had appealed the denial of Grievance No. CAY-18303-18 on April 29, 2018, by signing an appeal statement, but, as of June 20, 2018, the date plaintiff filed his complaint and commence this action, the Central Office Review Committee ("CORC") had not yet issued a response to that grievance, and plaintiff had not contacted Cayuga's Inmate Grievance Program Supervisor ("IGPS") or CORC regarding the status of his grievance appeal.  See id.  However, on October 19, 2020, the Attorney General's Office submitted a letter brief to "formally abandon" that argument in light of the Second Circuit's decision in Hayes v. Dahlke, 976 F.3d 259 (2d Cir. 2020).  See Dkt. No. 91 at 1.  The Attorney General's Office observed that, because CORC had not issued a response within 30 days of plaintiff's appeal, Hayes precluded their argument that plaintiff failed to exhaust administrative remedies by commencing the action before receiving a response from CORC.  See Dkt. No. 91 at 1.  Accordingly, defendants' argument in this regard is deemed withdrawn and abandoned.  See Hayes, 976 F.3d 259 (holding that, "because the DOCCS Inmate Grievance Procedure imposes a mandatory deadline for the CORC to respond, an inmate exhausts administrative remedies when he follows the procedure in its entirety but the CORC fails to respond within the 30 days it is allocated under the regulations.").  As defendants make no arguments with respect to the merits of plaintiff's Eighth Amendment claims for excessive force and failure to intervene against Sgt. Smith and C.O. Cashin, and defendants qualified immunity argument does not address these claims, see Dkt. No. 84-15 at 34, the abandonment of their failure to exhaust argument concerning plaintiff's Eighth Amendment claims renders their motion, in effect, a partial motion for summary judgment, despite defendants' request that the Amended Complaint "be dismissed in its entirety."  Id. at 36.

[7]  Defendants raised failure to exhaust as an affirmative defense in their Answer to plaintiff's Amended Complaint.  See Dkt. No. 34 at 3 ¶ 13 ("Plaintiff did not properly exhaust his administrative remedies prior to commencing this action and therefore this action is subject to dismissal under the [PLRA].").

Defendants contend that plaintiff failed to exhaust administrative remedies by failing to file a grievance concerning his First Amendment retaliation claims against (1) C.O. Withers' and C.O. Payne's for allegedly refusal to transfer him to a single cube bunk between February 22, and April 5, 2018; (2) Lt. Walawender, Sgt. Seymour, and C.O. Corey for allegedly retaliatorily transferring him to SHU on April 5, 2018; and (3) C.O. Stanton and C.O. Cashin for allegedly issuing him retaliatory inmate misbehavior reports on April 5 and 6, 2018.  See Dkt. No. 84-15 at 20-21.[8]  Defendants contend that these claims are not governed by 7 N.Y.C.R.R. § 701.3(i), which states that "an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the Prison Litigation Reform Act (PLRA) exhaustion requirement . . . before bringing a lawsuit regarding an alleged sexual abuse," if the inmate files a PREA complaint.  See id. at 18.  Rather, defendants aver, the foregoing retaliation claims are governed by the three-step grievance procedure set forth under 7 N.Y.C.R.R. § 701.1 et seq.  See id.  In particular, defendants argue that, although plaintiff premises the foregoing claims of retaliation on his filing a PREA complaint against C.O. Stanton on January 11, 2018, he "does not allege that . . . defendants sexually assaulted or harassed him, nor are his claims [in this regard] necessarily intertwined with PREA."  Id.  In support of this contention, defendants proffer the sworn declarations of Morgan Swan ("Swan"), the Inmate IGPS at Cayuga CF, and Rachael Seguin ("Seguin"), the Assistant Director of the Inmate Grievance Program ("IGP") for DOCCS.  See Dkt. No. 84-12 at 1 ¶ 1; Dkt. No. 84-13 at 1 ¶ 1.  Seguin declares that

---

[8]  Defendants do not dispute that plaintiff's claim against Sgt. DeGraff is governed by 7 N.Y.C.R.R. § 701.3(i) and, therefore, concede that plaintiff exhausted his administrative remedies as to that claim by filing a grievance relating to his claims against Sgt. DeGraff in this action.  See Dkt. No. 84-15 at 18 n.9.

plaintiff's First Amendment claims against (1) C.O. Withers' and C.O. Payne's for allegedly refusing to transfer him to a single cube bunk between February 22, and April 5, 2018; (2) Lt. Walawender, Sgt. Seymour, and C.O. Corey for allegedly retaliatorily transferring him to SHU on April 5, 2018; and (3) C.O. Stanton and C.O. Cashin for allegedly issuing him retaliatory inmate misbehavior reports on April 5 and 6, 2018, based on "alleged retaliation for a previously filed PREA complaint . . . are not covered under the exception for filing a grievance set forth in [section] 701.3(i) . . . as there are no allegations that any staff member sexually harassed or sexually assaulted plaintiff" or that any of the defendants "failed to protect plaintiff from any alleged sexual harassment or sexual assault." Id. at 7 ¶ 20.  Seguin explains, "[i]nstead," plaintiff's First Amendment retaliation claims "are issues properly addressed through the DOCCS IGP—i.e., through the established grievance procedures detailed in 7 N.Y.C.R.R. § 701.1 *et seq.*"  Id.  Swan also declares that the foregoing First Amendment retaliation claims are governed by the three-step grievance procedure under 7 N.Y.C.R.R. § 701.1 *et seq.*  See Dkt. No. 84-13 at 7 ¶¶ 20-21.

Defendants argue that, because plaintiff did not file grievances concerning the foregoing First Amendment retaliation claims, plaintiff failed to exhaust the three-step grievance procedure under 7 N.Y.C.R.R. § 701.1, and his claims must be dismissed for failure to exhaust administrative remedies.  See Dkt. No. 84-15 at 18-19.  In support their argument, defendants cite Swan's declaration, which states that, upon arrival at Cayuga CF, plaintiff attended and successfully completed the facility orientation, which includes a presentation on the facility's grievance policies and procedures.  See Dkt. No. 84-13 at at 2 ¶ 5.  Swan declares that, "[i]f plaintiff filed any grievances while he was

11

housed at Cayuga [CF] there would be a record of it in the Cayuga[ CF's] grievance office."  Id. at ¶ 23.  However, Swan declares that, "[a]s is evident from plaintiff's Inmate Grievance Report . . ., plaintiff did not file any grievance while housed at Cayuga [CF] related to" to the aforementioned retaliation claims.  Id. at 9 ¶ 33.  Swan explains that "plaintiff filed one grievance with Cayuga[ CF's] grievance office while he was housed [there]: Grievance No. CAY-18303-18."  Id. at ¶ 25.  Swan notes that "Grievance No. CAY-18303-18 was filed before the remaining claims [relating to the alleged incidents at Cayuga CF] occurred."  Id. at ¶ 26.  Included as an exhibit to Swan's declaration is plaintiff's grievance log at Cayuga CF from January 1, 2018, to May 3, 2018, which lists plaintiff's only grievance as Grievance No. 18303.  See id. at 20.

Further, Swan acknowledges that plaintiff's allegation that he filed a grievance concerning his retaliation claims against Lt. Walawender, Sgt. Seymour, and C.O. Corey based on the alleged April 5, 2018 incident, and against C.O. Stanton and C.O. Cashin based on their misbehavior reports, and that plaintiff claims to have submitted a letter following up with regards to his grievance against C.O. Cashin.  See id. at ¶¶ 35, 36.  However, "[u]pon review of the records maintained at Cayuga[ CF's] grievance office," Swan declares that "plaintiff did not: (1) file a grievance with respect to those claims, or (2) send any correspondence, including the April 21, 2018 letter attached to [plaintiff's] complaint, to Cayuga[ CF's] grievance office."  Id. at ¶ 37.  Concerning plaintiff's letter dated April 21, 2018, Swan declares that, "[h]ad plaintiff [send such correspondence], he would have been advised that no grievance was ever received or filed by Cayuga[ CF's] grievance office with respect to those claims."  Id.  Defendants also point to plaintiff's deposition testimony in which he acknowledged that he did not

12

file an inmate grievance against C.O. Withers and C.O. Payne based on their alleged refusal to transfer him to a single bunk cube.  See Dkt. No. 84-1 at 364.  Plaintiff states that he never filed an inmate grievance against C.O. Withers and C.O. Payne because his retaliation claim against those defendants was related to his PREA complaint against C.O. Stanton.  See id.

Moreover, defendants cite Seguin's declaration, which states that, in her role as the Assistant Director of the IGP for DOCCS, she "oversee[s] the records that DOCCS maintains of appeals received by [CORC], . . . the final level of administrative review in the DOCCS [IGP] pursuant to 7. N.Y.C.R.R. § 701 et seq."  Dkt. No. 84-12 at ¶ 3. Seguin's search of "CORC records for appeals received from facility-level grievance determinations for plaintiff" revealed that, aside from Grievance No. CAY-18303-18, "plaintiff did not appeal any grievance . . . to CORC related to his allegations . . . which are the subject of this action."  Id. at 7 ¶ 21, 8 ¶ 28.  Attached to Seguin's declaration is a list of plaintiff's grievances filed with CORC, which shows that plaintiff filed only Grievance No. CAY-18303-18 while incarcerated at Cayuga CF.  See id. at 12.

## 2. Merits of Plaintiff's First Amendment Retaliation Claims

### a. Sgt. DeGraff

Defendants posit that plaintiff's First Amendment retaliation claim against Sgt. DeGraff fails because plaintiff cannot establish a causal connection between the alleged retaliatory conduct related to the December 19, 2017 cell search and/or misbehavior report and plaintiff's protected conduct of filing a grievance against Sgt. DeGraff on December 8, 2017.  See Dkt. No. 84-15 at 24.  Defendants submit Sgt. DeGraff's sworn

declaration in which he states that he had no knowledge of plaintiff's December 8, 2017 grievance against him (Grievance No. GNE-9668-17) until he was interviewed about it on January 6, 2018.  See Dkt. No. 84-2 at 5 ¶ 28.  Sgt. DeGraff further declares that, "when [he] authorized the search of plaintiff's cell on December 19, 2017[, he] was unaware that plaintiff had filed Grievance No. GNE-9668-17 against [him]."  Id. at 6 ¶ 31.  Defendants also submit a memorandum drafted by Sgt. DeGraff on January 6, 2018, relating to Grievance No. GNE-9668-17 in which Sgt. DeGraff stated that he had "no knowledge of any complaints [plaintiff] ha[d] filed."  Id. at 24.  Sgt. DeGraff declares that, had he been aware of Grievance No. GNE-9668-17, he would have responded because "it was [his] custom and practice to respond to a grievance on the date[ he] was notified about it, or as soon thereafter as possible."  Id. at 5 ¶ 28.  In addition, defendants point to plaintiff's deposition testimony in which plaintiff stated that, "between December 8[] and December 15[, 2017]," Sgt. DeGraff did not say anything to [plaintiff]."  Dkt. No. 84-1 at 81.  Further, plaintiff responded "[n]o" when asked whether Sgt. DeGraff ever "ma[d]e any comments about the grievance [plaintiff] filed" or "ma[d]e any threats."  Id.  Plaintiff also testified that he did not "tell [Sgt. DeGraff he] file[d] the grievance."  Id.  However, plaintiff testified that he was "almost sure" Sgt. DeGraff knew about his December 8, 2017 grievance, because plaintiff "kn[e]w the grievance process and . . . once they start the investigation, they interview the person you're grieving, so [he was] pretty sure [Sgt. DeGraff] was interviewed within that time frame."  Id. at 82.

Further, defendants contend that plaintiff's First Amendment claim against Sgt. DeGraff fails because plaintiff has not established an adverse action based on the December 19, 2017 misbehavior report.  See Dkt. No. 84-15 at 25.  In particular,

14

defendants aver that, although the charges in Sgt. DeGraff's December 19, 2017 misbehavior report were ultimately reversed on appeal based solely on a technicality because a form was not properly submitted, it is undisputed that plaintiff committed the violations charged in the misbehavior report.  See id. at 26.  In his sworn declaration, Sgt. DeGraff denies that either of the officers who he ordered to conduct the cell search of plaintiff's cell on December 19, 2017, drew a penis on the wall of plaintiff's shower or urinated in plaintiff's cell, and states that plaintiff's property was not damaged during the cell search.  Dkt. No. 84-2 at 4 ¶ 20.  He also denies issuing plaintiff a false misbehavior report.  See id. at 2 ¶ 9.  Sgt. DeGraff states that, while making his regular rounds on December 19, 2017, he "noticed that there were numerous contraband items in plain sight in plaintiff's cell."  Dkt. No. 84-2 at 3 ¶ 13.  Sgt. DeGraff states that he "called for officers by radio to perform a suspicion search of plaintiff and his cellmate's cell."  Id. at ¶ 14.  He states that he "supervised the officers as they entered plaintiff's cell to conduct the search," and that "[d]uring the search, contraband was found, . . . includ[ing] stripped wires, pillows and sheets ripped to create drag lines" and "covering from the pillows [that] had been removed and thrown outside the rec area, and the filling [of which] was stuffed into the pillowcases."  Id. at ¶ 17.  Photographs of the contraband recovered from plaintiff's cell are included as an exhibit to Sgt. DeGraff's declaration.  See id. at 4 ¶ 18; id. at 9-10.  Thus, defendants argue, even assuming Sgt. DeGraff conducted the cell search with retaliatory animus, he ordered the cell search and issued the misbehavior report based on proper reasons, which precludes a finding of adverse action.  See Dkt. No. 84-15 at 26.  In addition, defendants posit that, since the hearing disposition relating to the December 19, 2017 misbehavior report was reversed prior to

plaintiff serving any portion of the 30-day keeplock sentence, plaintiff cannot establish adverse action.  See id. at 27.  Finally, defendants contend that Sgt. DeGraff's alleged threats made after the December 19, 2017 cell search were not sufficiently specific or serious to amount to adverse action.  See id. at 26.

### b. Sgt. Smith and Nurse Randolph

Defendants argue that plaintiff's First Amendment retaliation claim against Sgt. Smith and Nurse Randolph fails for lack of adverse action because legitimate reasons existed for placing plaintiff in SHU on suicide watch on January 17, 2018.  See Dkt. No. 84-15 at 27.  In support of this argument, defendants cite the sworn declaration of Nurse Randolph, who stated that, based on a review of her records from January 17, 2018, plaintiff told her that "he had been sexually harassed by a female correction officer on January 11, 2018; that he was in fear for his life and that he might hurt someone else; and that he had a history of depression."  Dkt. No. 84-4 at 2 ¶ 7.  "Using [her] medical judgment," and in compliance with DOCCS Directive No. 4101, Nurse Randolph states that she "determined that [plaintiff's] comments suggested that he could potentially harm himself or others," so she "requested that [plaintiff] be placed on a one-on-one suicide watch."  Id. at ¶ 8, ¶ 12; see id. at ¶ 9.

Defendants also contend that plaintiff fails to establish a causal connection between Nurse Randolph's recommendation that he be placed on suicide watch and his filing the January 11, 2018 PREA complaint against C.O. Stanton.  Dkt. No. 84-15 at 28.  Defendants again note Nurse Randolph's sworn declaration in which she states that she "was not informed of [p]laintiff's PREA complaint against C.O. Stanton prior to [her]

medical evaluation" of plaintiff and "did not act in retaliation for plaintiff's submission of

the PREA complaint and had no reason to do so."  Dkt. No. 84-4 at 3 ¶¶ 14, 15.

Defendants also note that plaintiff has not alleged that Nurse Randolph ever threatened

him.  See Dkt. No. 84-15 at 28.  Therefore, defendants argue, any assertion by plaintiff

that Nurse Randolph was aware of his PREA complaint against C.O. Stanton is

speculative and fails to establish sufficient causal connection to support a First

Amendment retaliation claim against her.  See id. 28.

### c. C.O. Withers and C.O. Payne

Defendants contend that plaintiff has established neither adverse action nor

causal connection with respect to his First Amendment retaliation claim against C.O.

Withers and C.O. Payne.  See Dkt. No. 84-15 at 29.  First, defendants argue that a non-

retaliatory reason existed for not moving plaintiff from a double bunk cube to a single

bunk cube between February 22, and April 5, 2018—because it was not yet plaintiff's

turn to move.  See id.  In support of their argument, defendants submit the sworn

declarations of C.O. Withers and C.O. Payne.  See Dkt. Nos. 84-6, 84-7.  C.O. Withers

declares that, although she does not specifically recall plaintiff, "[t]here was a procedure

in place to move inmates from a double bunk to a single bunk, which [she] always

followed."  Dkt. No. 84-6 at 2 ¶ 5.  C.O. Withers elaborates that, "[g]enerally, when an

inmate entered the [C-2] dorm, he would be placed on the top bunk of a double cube."

Id. at ¶ 9.  "After an inmate had been in a double bunk cube for a while, he could move

from a top to a bottom bunk if it became available," and then "from a double cube to a

single cube," depending on availability.  Id. at ¶ 10.  "[T]e procedure to move an inmate

17

from a double cube to a single cube was based solely on the inmate's seniority in the dorm." Id. at ¶ 11.  To keep track of the inmates' seniority, C.O. Withers declares that "[a] list was maintained of inmates eligible for a single cube based on the date they entered the dorm." Id. at ¶ 12.  When a single cube became available, "the next inmate on the eligible list would be asked if he wanted to move." Id. at ¶ 13.  Further, C.O. Withers explains that the approval of a supervisor and the inmate's consent were required before an inmate could be moved to a single cube, but that she "had no authority to move an inmate at his own request" and that she "only moved inmates based on seniority and with a supervisor's approval." Id. at ¶ 17; see id. at ¶¶15, 16. C.O. Payne's declaration reiterates the foregoing procedure for moving inmates from double to single bunk cubes.  See Dkt. No. 84-7 at 3-4 ¶¶ 19-27.  C.O. Payne adds that "[n]o inmate came in after plaintiff [who] was moved before him." Id. at ¶ 28.  Both C.O. Withers and C.O. Payne deny intentionally preventing plaintiff's transfer to a single cube and state that, to the extent plaintiff was not moved to a single cube between February 22, and April 5, 2018, "it was not his turn to move." Id. at ¶ 29; Dkt. No. 84-6 at 3 ¶ 19. Thus, defendants posit, plaintiff cannot establish adverse action.  See Dkt. No. 84-15 at 29.

Next, defendants contend that neither C.O. Withers nor C.O. Payne had knowledge of plaintiff's PREA complaint against C.O. Stanton and, therefore, plaintiff cannot establish retaliation.  See Dkt. No. 84-15 at 30.  Defendants point to C.O. Withers' and C.O. Payne's sworn declarations in which both defendants state that they did not work the same shift as each other, but worked on days when the other was off from work, and rarely had any contact with each other.  See Dkt. No. 84-6 at 3 ¶ 20;

Dkt. No. 84-7 at 3 ¶¶ 13, 15-17.  C.O. Withers declares that she did not know C.O. Stanton until becoming involved in the present lawsuit, see See Dkt. No. 84-6 at 3 ¶ 22, and C.O. Payne states that he only rarely had any contact with C.O. Stanton, as she worked a different shift than him.  See Dkt. No. 84-7 at 3 ¶ 13.  Both C.O. Withers and C.O. Payne declare that they were unaware of plaintiff's PREA complaint against C.O. Stanton, and never had any conversations about either plaintiff or C.O. Stanton.  See Dkt. No. 84-6 at 3 ¶ 22; Dkt. No. 84-7 at 5 ¶¶ 30-31.  Defendants further posit that, even if C.O. Withers told plaintiff she was going to send him back to SHU, "she never mentioned the PREA complaint to him," and that, "even if C.O. Payne mentioned to another officer that plaintiff filed a PREA complaint against a 'female officer' on January 22, 2018, he did not mention which officer the complaint was filed against, []or make any comments about potentially retaliating against plaintiff."  Dkt. No. 84-15 at 31.  Defendants also point to plaintiff's deposition testimony in which he acknowledged that he did not "objectively" know whether C.O. Withers knew about his PREA complaint against C.O. Stanton, but only assumed that she did "because [the C.O.s] all talk amongst themselves."  Dkt. No. 84-1 at 336.  Thus, defendants argue, plaintiff has failed to establish retaliatory animus and causation to support a First Amendment retaliation claim against C.O. Withers and C.O. Payne.  See Dkt. No. 84-15 at 30, 31.

### d. Lt. Walawender, Sgt. Seymour, and C.O. Corey

Defendants argue that plaintiff's First Amendment retaliation claim against Lt. Walawender, Sgt. Seymour, and C.O. Corey based on his placement in SHU on April 5, 2018, must be dismissed because plaintiff has failed to establish adverse action.  See

Dkt. No. 84-15 at 31.  In particular, defendants posit that the record evidence establishes that Sgt. Seymour directed that plaintiff be placed in SHU for a non-retaliatory reason—plaintiff failed to comply with a direct order in violation of DOCCS rules.  See id.  In addition, defendants argue that plaintiff has failed to establish a causal nexus between his PREA complaint against C.O. Stanton and his placement in SHU on April 5, 2018.  See id.  Defendants point to plaintiff's deposition testimony in which he stated that he "kn[e]w for a fact that [Sgt. Seymour] didn't know" about plaintiff's PREA complaint before plaintiff showed him the letter from Effman.  Dkt. No. 84-1 at 403. Moreover, defendants note that plaintiff testified at his deposition that Lt. Walawender, Sgt. Seymour, and C.O. Corey had no basis to retaliate against plaintiff and that plaintiff had not even seen any of these defendants prior to April 5, 2018.  See id. at 402, 404-05.

### e. C.O. Stanton and C.O. Cashin

Defendants also contend that plaintiff's First Amendment retaliation claims against C.O. Stanton and C.O. Cashin based on the allegedly false misbehavior reports they issued plaintiff on April 5, and April 6, 2018, fail because they do not constitute adverse action.  See Dkt. No. 84-15 at 32.  Defendants point out that plaintiff was found guilty of all charges filed against him in both misbehavior reports.  See id.  Thus, defendants posit, they are entitled to summary judgment dismissing plaintiff's First Amendment claim based on C.O. Stanton's and C.O. Cashin's April 2018 misbehavior reports.  See id.

### 3. Qualified Immunity

Defendants argue that, "[t]o the extent that plaintiff has provided sufficient evidence to assert First Amendment retaliation claims against Sgt. Smith, Nurse Randolph, C.O. Withers, C.O. Payne[,] and C.O. Corey, they are nevertheless entitled to qualified immunity."  Dkt. No. 84-15 at 34.  Concerning plaintiff's retaliation claim against Nurse Randolph, defendants posit that, given plaintiff's statements to Nurse Randolph on January 17, 2018, that he was in a fragile mental state and concerned that he may hurt someone if he went back to his dorm, it was reasonable for Nurse Randolph to recommend his placement on SHU suicide watch.  See id.  With respect to plaintiff's retaliation claim against Sgt. Smith stemming from his placement in SHU suicide watch, defendants argue that Sgt. Smith had no individual authority to place plaintiff on suicide watch.  See id.  Further, defendants posit that, as neither C.O. Withers nor C.O. Payne had authority to move plaintiff to a single bunk cube without a supervisor's approval, it was not objectively unreasonable for those defendants to keep plaintiff in a double bunk cube.  See id.  Finally, defendants aver that no reasonable official would conclude that C.O. Corey violated plaintiff's rights by escorting him to SHU on April 5, 2018, as he was merely following orders given by Lt. Walawender and Sgt. Seymour.  See id.  Defendants cite plaintiff's deposition testimony in which plaintiff acknowledged that C.O. Corey's involvement was limited to placing handcuffs on him and escorting him to a SHU cell, and that C.O. Corey "had no choice" but to follow the direction of Sgt. Seymour.  See id.; Dkt. No. 84-1 at 394.

21

### III. Discussion[9]

### A. Legal Standard

Summary judgment may be granted only if the submissions of the parties taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists." Price v. Oropallo, No. 9:13-CV-0563 (GTS/TWD), 2014 WL 4146276, at *4 (N.D.N.Y. Aug. 19, 2014) (citing Salahuddin v. Goord, 467 F.3d 263, 272-73 (2d Cir. 2006)). Facts are material if they may affect the outcome of the case as determined by substantive law. See Anderson, 477 U.S. at 248. A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (internal quotation marks omitted). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. See Salahuddin, 467 F.3d at 273. The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Conclusory allegations,

---

[9] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

conjecture, and speculation . . . are insufficient to create a genuine issue of fact."

Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence.

See Spiegel v. Schulmann, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in

determining the appropriateness of a grant of summary judgment, [the court] . . . may

rely only on admissible evidence.") (internal quotation marks and citation omitted); see

also Schwapp v. Town of Avon, 118 F.3d 106, 111 (2d Cir. 1997) ("[A]ffidavtis must be

based upon concrete particulars, not conclusory allegations." (internal quotation marks

and citation omitted)).  "Statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported motion for summary

judgment."  Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1999).  "'The mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

there must be evidence on which the jury could *reasonably* find for the plaintiff.'"

Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005) (brackets omitted)

(quoting Anderson, 477 U.S. at 252).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude.  See Treistman v. Fed. Bureau of Prisons, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to special solicitude, that a *pro se* litigant's
> submissions must be construed liberally, and that such
> submissions must be read to raise the strongest arguments
> that they suggest.  At the same time, our cases have also
> indicated that we cannot read into *pro se* submissions claims
> that are not consistent with the *pro se* litigant's allegations,
> or arguments that the submissions themselves do not
> suggest, that we should not excuse frivolous or vexatious
> filings by *pro se* litigants, and that *pro se* status does not

23

exempt a party from compliance with relevant rules of
procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v.
Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to
count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a
court is obligated to construe his pleadings liberally.") (internal quotation marks and
citations omitted).

## B. Abandonment of Claims

Despite defendants express warning of the consequences of failing to properly
respond to their motion for summary judgment, see Dkt. No. 84 at 2-3, plaintiff did not
file a response in opposition to defendants' motion for summary judgment. Accordingly,
plaintiff's First Amendment retaliation claims against Sgt. DeGraff; C.O. Withers, C.O.
Payne, Lt. Walawender, Sgt. Seymour, C.O. Corey, Sgt. Smith, Nurse Randolph, C.O.
Stanton, and C.O. Cashin should be dismissed as abandoned. See Maher v. All. Mortg.
Banking Corp., 650 F. Supp. 2d 249, 267 (E.D.N.Y. 2009) ("Federal courts may deem a
claim abandoned when a party moves for summary judgment on one ground and the
party opposing summary judgment fails to address the argument in any way." (internal
quotation marks and citation omitted)); see also Wiggan v. New York City Dep't. of
Correction, No. 12-CV-1405 (GBD/HBP), 2014 WL 4631456, at *3 (W.D.N.Y. Sept. 16,
2014) (granting summary judgment and dismissing claims, as abandoned, that a pro se
inmate failed to address in response to the defendants' motion for summary judgment);
Martien v. City of Schenectady, No. 1:04-CV-679 (FJS/RFT), 2006 WL 1555565, at *2
(N.D.N.Y. June 2, 2006) (deeming abandoned and granting summary judgment in favor

of the defendant as to a claim that the <u>pro se</u> plaintiff did not address in response to the defendant's motion for summary judgment).  Even if plaintiff had responded to defendants' motion, defendants would be entitled to partial summary judgment for the reasons that follow.

## C. Exhaustion of Administrative Remedies

As an initial matter, defendants correctly argue that plaintiff's First Amendment retaliation claims against (1) C.O. Withers and C.O. Payne for allegedly refusing to transfer him to a single cube bunk between February 22, and April 5, 2018; (2) Lt. Walawender, Sgt. Seymour, and C.O. Corey for allegedly retaliatorily transferring him to SHU on April 5, 2018; and (3) C.O. Stanton and C.O. Cashin for allegedly issuing him retaliatory inmate misbehavior reports on April 5 and 6, 2018, are governed by 7 N.Y.C.R.R. § 701.1 <i>et seq.</i>, not section 701.3(i).  <u>See</u> Dkt. No. 84-15 at 18-19.  As Swan and Seguin correctly explained in their sworn declarations, although the foregoing retaliation claims are premised on alleged acts in retaliation for plaintiff's filing his January 11, 2018 PREA complaint against C.O. Stanton, none of plaintiff's retaliation claims involve allegations of sexual abuse or harassment or failure to prevent sexual abuse or harassment.  <u>See</u> Dkt. No. 84-12 at 7 ¶ 20; Dkt. No. 84-13 at 6 ¶¶ 19, 21. Rather, the foregoing retaliation claims were the proper subject for the grievance procedure set forth in 7 N.Y.C.R.R. § 701.1 <i>et seq.</i>  <u>See</u> Dkt. No. 84-12 at 7 ¶ 20; Dkt. No. 84-13 at 6 ¶¶ 19, 21; <u>see also</u> <u>Waters v. Melendez</u>, No. 15-CV-0805 (TJM/CFH), 2018 WL 3079764, at *3 (N.D.N.Y. May 18, 2018) (analyzing the issue of exhaustion of administrative remedies for the plaintiff's First Amendment retaliation claims, which

were premised on his filing of a PREA complaint, under the grievance procedure in 7 N.Y.C.R.R. § 701.1 *et seq.* and applicable caselaw where his retaliation claims did not allege sexual abuse or harassment or the failure to prevent sexual abuse or harassment), <u>report and recommendation adopted</u>, No. 9:15-CV-0805 (TJM/CFH), 2018 WL 3069209 (N.D.N.Y. June 21, 2018), <u>aff'd</u>, 783 F. App'x 56 (2d Cir. 2019) (summary order); <u>Johnson v. Conley</u>, No. 3:17-CV-00070 (JAM), 2018 WL 4224076, at *2 (D. Conn. Sept. 5, 2018) (same), <u>appeal dismissed</u> (Nov. 26, 2018). Thus, the undersigned will assess the issue of exhaustion of the foregoing claims based on the grievance procedure set forth under 7 N.Y.C.R.R. § 701.1 *et seq.*

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. <u>See</u> 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" <u>Cucchiara v. Dumont</u>, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002)). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. <u>See</u> <u>Porter</u>, 534 U.S. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility

in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293

(DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549

U.S. 199, 218 (2007).

    While the Supreme Court has deemed exhaustion mandatory, the Second Circuit

has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d

170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted).  Until recently,

courts in this District followed a three-part test established by the Second Circuit in

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).  Under the test established in

Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that

his or her failure to exhaust was justified by "special circumstances." Id.  However, in

Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten

'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v.

Blake, _____ U.S. _____ 136 S. Ct. 1850, 1862 (2016).  Thus, the special circumstances

exception previously promulgated by the Second Circuit in Hemphill is no longer

consistent with the statutory requirements of the PLRA.  See Williams v. Correction

Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

    However, courts must still consider the PLRA's "textual exception to mandatory

exhaustion." Ross, _____ U.S. _____, 136 S. Ct. at 1858.  Under this exception, courts

must determine whether administrative remedies were "available" to a prisoner. Id.  The

Supreme Court identified three circumstances where administrative remedies may be

unavailable to a prisoner.  First, "an administrative procedure is unavailable when

(despite what regulations or guidance materials may promise) it operates as a simple

dead end—with officers unable or consistently unwilling to provide any relief to

aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."  Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP.  See Dkt. No. 65-6 at 7-24; Dkt. No. 65-7 at 2-3 ¶¶ 7-9; see also N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5.  First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident.  See 7 N.Y.C.R.R. § 701.5(a)(1).  An IGP representative has 16 calendar days to informally resolve the issue.  See id. at § 701.5(b)(1).  If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing.  See id. at § 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination.  See id. at § 701.5(c)(1).  If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination.  See id. at § 701.5(d)(1)(i).  CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct

parties within thirty 30 calendar days from the time the appeal was received." Id. at §
701.5(d)(3)(ii).

"Ordinarily, absent the finding of a basis to excuse non-compliance with this
prescribed process, only upon exhaustion of these three levels of review may a prisoner
seek relief pursuant to section 1983 in a federal court." Murray v. Goord, 668 F. Supp.
2d 344, 355-56 (N.D.N.Y. 2009).  On a motion for summary judgment, "[t]he defendant
bears the burden of proving that the administrative remedies available to the plaintiff
were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No.
9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report
and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270
(N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust his Administrative Remedies

Defendants have met their burden of establishing that no genuine issue of
material fact exists concerning plaintiff's failure to exhaust his administrative remedies
with respect to his First Amendment retaliation claims premised on his filing of the
January 11, 2018 PREA complaint against (1) C.O. Withers' and C.O. Payne's for
allegedly refusing to transfer him to a single cube bunk between February 22, and April
5, 2018; (2) Lt. Walawender, Sgt. Seymour, and C.O. Corey for allegedly retaliatorily
transferring him to SHU on April 5, 2018; and (3) C.O. Stanton and C.O. Cashin for
allegedly issuing him retaliatory inmate misbehavior reports on April 5 and 6, 2018.  The
sworn declarations of Swan and Seguin and accompanying exhibits make clear that
neither Cayuga CF IGP nor CORC have any record of plaintiff filing grievances or

administrative appeals relating to those claims.  See Dkt. No. 84-12 at 8 ¶ 28, 11-12;

Dkt. Nos. 84-13 at 9 ¶¶ 33, 37.  As Swan explained, review of the records maintained at

Cayuga's grievance office demonstrates that "plaintiff did not: (1) file a grievance with

respect to those claims, or (2) send any correspondence, including the April 21, 2018

letter attached to [plaintiff's] complaint, to Cayuga's grievance office."  Dkt. No. 84-13 at

10 ¶ 37.  Further, as Swan declared with respect to plaintiff's purported letter dated April

21, 2018, "[h]ad plaintiff [sent such correspondence], he would have been advised that

no grievance was ever received or filed by Cayuga's grievance office with respect to

those claims."  Id.  Therefore, as plaintiff failed to file a grievance concerning these

claims, he has failed to exhaust his administrative remedies.  See Barnes v. Annucci,

No. 9:15-CV-0777 (GLS/DEP), 2019 WL 1387460, at *8 (N.D.N.Y. Mar. 12, 2019)

(explaining that, "if a plaintiff fails to follow each of the required three steps of the . . .

IGP prior to commencing litigation, he has failed to exhaust his administrative remedies

as required under the PLRA."), report and recommendation adopted, No. 9:15-CV-777

(GLS/DEP), 2019 WL 1385297 (N.D.N.Y. Mar. 27, 2019).  In addition, as Seguin's

declaration and supporting documentation establishes, aside from Grievance No. CAY-

18303-18, plaintiff did not appeal any grievance decision to CORC.  See Dkt. No. 84-12

at 7 ¶ 21, 8 ¶ 28, 12; see also Omaro v. Annucci, 68 F. Supp. 3d 359, 364 (W.D.N.Y.

2014) ("It is well-established that an inmate who does not appeal to CORC has failed to

exhaust his administrative remedies.").

     Furthermore, no exception to the mandatory exhaustion requirement applies

here.  As the record evidence demonstrates, the inmate grievance process, as set forth

in 7 N.Y.C.R.R. § 701 et seq. and DOCCS Directive No. 4040, was available to plaintiff

and plaintiff was well-versed in that process as evidenced by his filing 10 grievances between April 2018, and January 1, 2019, while incarcerated at various DOCCS facilities, including Cayuga CF.  See Dkt. No. 84-12 at 11-12.  Further, plaintiff's contention that he did not file a grievance against C.O. Withers or C.O. Payne for their alleged retaliatory refusal to place him in a single bunk cube between February 22, and April 5, 2018, because he believed his retaliation claim against those defendants was related to his PREA complaint against C.O. Stanton fails to raise a genuine issue of material fact.  See Dkt. No. 84-1 at 364; Cuello v. Lindsay, No. 09-CV-4525 (KAM/MDG), 2011 WL 1134711, at *9 (E.D.N.Y. Mar. 25, 2011) (explaining that ignorance of the law in general is insufficient to excuse exhaustion).  Indeed, plaintiff does not claim that his ignorance was due to ambiguous language in the regulations, making the grievance procedure "unavailable."  See Hurst v. Mollnow, No. 9:16-CV-1062 (DNH/TWD), 2018 WL 4178226, at *8 (N.D.N.Y. July 20, 2018), report and recommendation adopted, No. 9:16-CV-1062 (DNH/TWD), 2018 WL 4153926 (N.D.N.Y. Aug. 30, 2018); Cf. Williams v. Priatno, 829 F.3d 118, 124 (2d Cir. 2016) (observing that administrative remedies are unavailable if the regulatory scheme providing for appeal is so opaque and confusing that the inmate could not use it (internal quotation marks and citation omitted)).  In addition, given the exhibits in this case, plaintiff does not, and cannot claim that any officer prevented him from filing a grievance with respect to the First Amendment claims against C.O. Withers, C.O. Payne, Lt. Walawender, Sgt. Seymour, C.O. Corey, C.O. Stanton, and C.O. Cashin.

Where a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint

with prejudice because any attempt to exhaust would be futile.  See Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice.").  Here, more than two years have passed since the alleged First Amendment retaliations that took place between February and April 2018, for which plaintiff failed to file any grievances and/or administrative appeals.  Consequently, dismissal with prejudice is appropriate as to plaintiff's First Amendment retaliation claims against C.O. Withers, C.O. Payne, Lt. Walawender, Sgt. Seymour, C.O. Corey, C.O. Stanton, and C.O. Cashin.  See Berry, 366 F.3d at 88; Richard, 2019 WL 5197041, at *9.  Thus, in the alternative to dismissal of plaintiff's First Amendment retaliation claims against C.O. Withers, C.O. Payne, Lt. Walawender, Sgt. Seymour, C.O. Corey, C.O. Stanton, and C.O. Cashin, as abandoned, it is recommended that these claims be dismissed with prejudice for plaintiff's failure to exhaust available administrative remedies.  Moreover, even if the Court declines to dismiss these claims as abandoned or for failure to exhaust available administrative remedies, it is recommended that defendants be granted summary judgment as to these claims, and plaintiff's retaliation claims against Sgt. DeGraff, Sgt. Smith, and Nurse Randolph for the reasons presented below.

### D. Merits of Plaintiff's First Amendment Retaliation Claims

In order to establish a First Amendment retaliation claim under Section 1983, a prisoner must show the following: that "(1) . . . the speech or conduct at issue was

protected, (2) . . . the defendant took adverse action against the plaintiff, and (3) . . . there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citations omitted). "[I]n the prison context . . . adverse action" is "defined . . . *objectively*[] as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004) (internal quotation marks and citation omitted). "[T]his objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." Id.  With respect to the third element of the test, although "'[a] plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action[,]' [s]uch circumstantial evidence of retaliation, . . . without more, is insufficient to survive summary judgment." Roseboro v. Gillespie, 791 F. Supp. 2d 353, 370 (S.D.N.Y. 2011) (quoting Espinal, 558 F.3d at 129).  "Even if plaintiff makes the appropriate showing of retaliation, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct." Brooks v. Rock, 9:11-CV-1171 (GLS/ATB), 2014 WL 1292232, at *18 (N.D.N.Y. Mar. 28, 2014) (citation omitted); see Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003) ("Regardless of the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." (italics omitted)).

"[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Bennett

v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations omitted).  Accordingly, the Second Circuit requires courts to "examine prisoners' claims of retaliation with skepticism and particular care."  Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).  Thus, "a plaintiff asserting such a claim bears a heightened burden of proof and must plead the claim with particularity."  Green v. Phillips, No. 04-CV-10202 (TPG), 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) (citing Brown v. Middaugh, 41 F. Supp. 2d 172, 191 (N.D.N.Y. 1999)).  Consequently, a plaintiff must set forth non-conclusory allegations to sustain a retaliation claim.  See Green, 2006 WL 846272, at *3; see also Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("In recognition of the reality that retaliation claims can be fabricated easily, plaintiffs bear a somewhat heightened burden of proof, and summary judgment can be granted if the claim appears insubstantial." (internal quotation marks and citation omitted)).  Allegations, although specific, "may still be deemed conclusory if [they are] (1) largely unsubstantiated by any other direct evidence and (2) so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."  Smith v. Woods, No. 9:03-CV-480 (DNH/GHL), 2006 WL 1133247, at *3 (N.D.N.Y. Apr. 24, 2006) (internal quotation marks and citations omitted).

### 1. Sgt. DeGraff

Plaintiff's First Amendment retaliation claim against Sgt. DeGraff fails.  It is undisputed that plaintiff's December 8, 2017 grievance against Sgt. DeGraff constitutes protected activity.   See Dkt. No. 84-15 at 24; Davis v. Goord, 320 F.3d 346, 352-53 (2d

Cir. 2003) ("the filing of prison grievances is a constitutionally protected activity").  To plausibly allege causation, a plaintiff "must allege facts suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against him."  Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009) (internal quotations, brackets, and citations omitted).  It is well settled that "[a]llegations of adverse actions alone . . . are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct."  Baskerville v. Blott, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). Factors indicating retaliatory motive include: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) an inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his motivation.  See id. (citing Colon, 58 F.3d at 872-73).  With regard to temporal proximity, the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  Gorman-Bakos v. Cornell Co-op. Extension of Schenectady Cty, 252 F.3d 545, 554 (2d Cir. 2001).

However, as the Second Circuit explained:

> [P]risoner retaliation claims are easily fabricated, and    . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  Accordingly, while we have held that temporal proximity between protected conduct and an adverse action constitutes circumstantial evidence of retaliation, we have consistently required some further evidence of retaliatory animus before permitting a prisoner to proceed to trial on a retaliation claim.

Faulk v. Fisher, 545 F. App'x 56, 58 (2d Cir. 2013) (summary order) (internal citations and quotation marks omitted).

Here, although Sgt. DeGraff's December 17, 2017 cell search occurred within a close temporal proximity to plaintiff filing his December 8, 2017 grievance, it is well-settled that "temporal proximity without more is insufficient to survive summary judgment." Flynn v. Ward, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *11 (N.D.N.Y. June 7, 2018) (internal quotation marks and citation omitted). Defendants' admissible evidence, including Sgt. DeGraff's sworn declaration and attached exhibits, demonstrate that plaintiff has not established causation between plaintiff's protected activity of filing the December 8, 2017 grievance against Sgt. DeGraff's and Sgt. DeGraff's alleged retaliatory actions of conducting a destructive cell search and issuing plaintiff a misbehavior report. Sgt. DeGraff's sworn declaration states that he had no knowledge of plaintiff's December 8, 2017 grievance against him until he was interviewed about Grievance No. GNE-9668-17 on January 6, 2018—well after the allegedly destructive cell search was conducted or false misbehavior report was issued. See Dkt. No. 84-2 at 5 ¶ 28; Dkt. No. 84-2 at 24. Plaintiff has not produced any evidence, admissible or otherwise, to refute Sgt. DeGraff's sworn statements. See Henson v. Gagnon, No. 9:13-CV-0590 (GTS/TWD), 2015 WL 9809874, at *12-13 (N.D.N.Y. Dec. 10, 2015) (granting summary judgment and dismissing a pro se inmate's First Amendment retaliation claim against a correction officer for failure to establish causation where the correction officer submitted a sworn statement that he had no knowledge of the plaintiff's grievance against him at the time he conducted a cell search and issued the plaintiff a misbehavior report, and the plaintiff offered no evidence to

36

refute the correction officer's sworn statement), <u>report and recommendation adopted</u>, No. 9:13-CV-0590 (GTS/TWD), 2016 WL 204494 (N.D.N.Y. Jan. 15, 2016).  Further, plaintiff's conclusory assertion that he was "almost sure" that Sgt. DeGraff had knowledge of the December 8, 2017 grievance is insufficient to raise a genuine issue of material fact with respect to Sgt. DeGraff's knowledge.  Dkt. No. 84-1 at 82.  <u>See</u> <u>Henson</u>, 2015 WL 9809874, at *12 ("[C]onclusory statements are not sufficient to support causation on retaliation claims; the claims must be supported by specific facts.").  Moreover, plaintiff acknowledged during his deposition that Sgt. DeGraff never made any comments or threats to plaintiff for filing the December 8, 2017 grievance, and that between December 8 and 15, 2017, Sgt. DeGraff "did not say anything to" plaintiff.  Dkt. No. 84 at 81.  Therefore, plaintiff's retaliation claim against Sgt. DeGraff is unsupported by any statements of retaliatory animus by DeGraff.  <u>See</u> <u>Baskerville</u>, 224 F. Supp. 2d at 732 (citing <u>Colon</u>, 58 F.3d at 872-73).  In addition, "[t]he record . . . establishes that the misbehavior report was issued not with retaliatory intent, but simply because contraband . . . was in fact recovered from [p]laintiff's cell during that search." <u>LeBron v. Selsky</u>, No. 905-CV-0172 (GTS/DRH), 2010 WL 1235593, at *5 (N.D.N.Y. Mar. 31, 2010).  Indeed, it is undisputed that plaintiff was found guilty of the charges in Sgt. DeGraff's misbehavior report, and that plaintiff's guilty determination was only reversed on administrative appeal because a paper was not correctly filed.  <u>See</u> Amen. Compl. at 15; Dkt. No. 84-15 at 25; <u>see</u> <u>also</u> <u>LeBron</u>, 2010 WL 1235593, at *5 n.9 (rejecting the plaintiff's First Amendment retaliation claim premised on an allegedly false misbehavior report and observing that, although the disciplinary conviction upon which the allegedly false misbehavior report was based was ultimately reversed on appeal,

"no admissible record evidence exist[ed] indicating that the reversal was based on a finding that the misbehavior report in question was intentionally false or even unintentionally false; rather, the reversal was based merely on a finding that the disciplinary hearing was incomplete.").

Finally, defendants have also demonstrated, through admissible evidence, that Sgt. DeGraff ordered the cell search because he personally observed large amounts of contraband in plaintiff's cell, the photographs of which are included as an exhibit to Sgt. DeGraff's sworn declaration—not based on any retaliatory motive.  See Dkt. No. 84-2 at ¶ 17, 4 ¶ 18, 9-10.  Thus, defendants have established that Sgt. DeGraff would have taken the action complained of regardless of any retaliatory animus he may have held against plaintiff.  See Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003); Brooks, 2014 WL 1292232, at *18 (citation omitted)).  In addition, in his uncontroverted sworn declaration, Sgt. DeGraff denies that he or the officers who conducted the December 17, 2017 cell search, which he supervised, destroyed any of plaintiff's property, drew a picture of a penis on plaintiff's shower, or urinated in plaintiff's cell.  See Dkt. No. 84-2 at 4 ¶ 20.  Consequently, it is recommended that plaintiff's First Amendment retaliation claim against Sgt. DeGraff be dismissed.

### 2. Sgt. Smith and Nurse Randolph

Plaintiff's First Amendment retaliation claim against Sgt. Smith and Nurse Randolph is meritless.  Plaintiff's allegations are belied by Nurse Randolph's sworn affidavit, in which she denied having knowledge of plaintiff's January 11, 2018 PREA complaint against C.O. Stanton, or that she and Sgt. Smith retaliated against plaintiff by

placing him on suicide watch.  See Dkt. No. 84-4 at 3 ¶¶ 14, 15.  Indeed, contrary to

plaintiff's self-serving allegations that Sgt. Smith threatened him to retract his PREA

complaint in front of Nurse Randolph, her uncontroverted sworn declaration establishes

that she "was not informed of [p]laintiff's PREA complaint against C.O. Stanton prior to

[her] medical evaluation."  Id. at 3 ¶ 14.  In addition, Nurse Randolph's sworn

declaration establishes that she recommended placing plaintiff on suicide watch based

on her medical judgment and because she "determined that [plaintiff's] comments

suggested that he could potentially harm himself or others," not for any retaliatory

motive.  Id. at ¶ 8.  Plaintiff's retaliation claim is further undercut by Sgt. Smith's

uncontroverted sworn declaration in which he states that, "[c]ontrary to [p]laintiff's

claim," he interviewed plaintiff on January 17, 2018, regarding plaintiff's PREA

complaints against Sgt. DeGraff and C.O. Stanton "in the Disciplinary Lieutenant's office

at Cayuga [CF]," and that "[he] was the only person in the room with [plaintiff] during the

interview."  Dkt. No. 84-3 at ¶¶ 5, 6.  Sgt. Smith also denies threatening plaintiff to drop

his PREA complaints and states that, "[a]t some point during the interview, plaintiff told

[him] that he was in fear for his life and he was going to hurt someone if he went back to

his down."  Id. at ¶ 12.  Based on plaintiff's comments, Sgt. Smith escorted him to the

infirmary, where Nurse Randolph recommended placing plaintiff on suicide watch after

he reiterated his concerns for his life and his potential to harm others.  See id. at ¶¶ 15,

16.  Thus, defendants have established that plaintiff's placement on suicide watch did

not constitute adverse action under the circumstances, and that this action would have

been taken regardless of any retaliatory animus they may have held against him.  See

Scott, 344 F.3d at 287-88; Brooks, 2014 WL 1292232, at *18; see also Mateo v.

Fischer, 682 F. Supp. 2d 423, 434-35 (S.D.N.Y. 2010) (dismissing the plaintiff's First Amendment retaliation claim based on his transfer to the Office of Mental Health ("OMH") where the Court concluded that the plaintiff's statements "could lead a reasonable person to believe that a referral to OMH was justified."). Accordingly, it is recommended that plaintiff's retaliation claims against Sgt. Smith and Nurse Randolph be dismissed.

### 3. C.O. Withers and C.O. Payne

Plaintiff's claim that C.O. Withers and C.O. Payne retaliated against him in violation of his First Amendment rights for filing his PREA complaint against C.O. Stanton by refusing to transfer him to a single bunk cube lacks merit and is belied by defendants' admissible evidence. To the extent that plaintiff contends that C.O. Withers and C.O. Payne violated internal Cayuga CF policy or regulations by transferring inmates with less seniority to single bunk cubes before him in the C-2 dorm, plaintiff's claim fails because it is well settled that "[a] section 1983 claim is not the appropriate forum in which to seek review of a violation of a prison regulation." McAllister v. Call, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11 (N.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted); see Ahlers v. Nowicki, No. 9:12-CV-0539 (DNH/RFT), 2014 WL 1056935, at *4 (N.D.N.Y. Mar.18, 2014) ("[C]laims involving the improper adherence to proprietary facility policies are incognizable under § 1983; only rights secured by the Constitution and federal law are actionable under § 1983.").

Next, the record is bereft of facts to support a causal nexus between plaintiff's PREA complaint against C.O. Stanton and C.O. Withers' and C.O. Payne's alleged

refusal to place him in a single bunk cube.  The Amended Complaint fails to allege

specific facts that these defendants had knowledge of his PREA complaint against C.O.

Stanton.  See Amen. Compl. at 23.  Rather, C.O. Withers' and C.O. Payne's

uncontroverted sown declarations state that they did not have knowledge of plaintiff's

PREA complaint against C.O. Stanton and never had any conversations about either

her or plaintiff.  See Dkt. No. 84-6 at 3 ¶ 22; Dkt. No. 84-7 at 5 ¶¶ 30-31.  In fact, C.O.

Withers and C.O. Payne did not even work the same shift and had only rare interactions

with one another.  See Dkt. No. 84-6 at 3 ¶ 20; Dkt. No. 84-7 at 3 ¶¶ 13, 15-17.  In

addition, C.O. Withers did not know of C.O. Stanton before becoming involved in this

lawsuit, see Dkt. No. 84-6 at 3 ¶ 22, and C.O. Payne had only rare interactions with

C.O. Stanton as they did not work the same shift.  See Dkt. No. 84-7 at 3 ¶ 13.  Thus,

plaintiff's conclusory assertion that he assumed that these defendants knew of his

PREA complaint "because [the C.O.] all talk among themselves," Dkt. No. 84-1 at 336,

is insufficient establish causation between his protected conduct and the alleged

adverse action.  See Baskerville, 224 F. Supp. 2d at 732; See Henson, 2015 WL

9809874, at *12-13.

        In any event, C.O. Wither's and C.O. Payne's uncontested sworn declarations

establish prima facie that no adverse action was taken against plaintiff insofar as he

was not transferred to a single bunk cube between February 22, and April 5, 2018.

C.O. Withers and C.O. Payne both declare that they did not intentionally prevent

plaintiff's transfer and explain that, to the extent that plaintiff was not moved to a single

bunk cube between February 22, and April 5, 2018, it was because it was not yet his

turn to move under Cayuga CF's procedure for such transfers.  See Dkt. No. 84-6 at 3 ¶

19; Dkt. No. 84-7 at ¶ 29.  Thus, even if C.O. Withers and/or C.O. Payne held retaliatory animus against plaintiff, which plaintiff has not demonstrated, defendants have established that plaintiff still would not have been transferred to a single bed cube during that period.  <u>Scott</u>, 344 F.3d at 287-88; <u>Brooks</u>, 2014 WL 1292232, at *18. Consequently, it is recommended that plaintiff's First Amendment retaliation claims against C.O. Withers and C.O. Payne be dismissed.

### 4. Lt. Walawender, Sgt. Seymour, and C.O. Corey

Plaintiff's First Amendment retaliation claim against Lt. Walawender, Sgt. Seymour, and C.O. Corey also lacks merit and is belied by defendants' uncontroverted admissible evidence.  Rather than placing plaintiff in SHU on April 5, 2018 in retaliation for plaintiff's PREA complaint against C.O. Stanton—plaintiff's own evidence, namely C.O. Stanton's April 5, 2018 misbehavior report—establishes that plaintiff was placed in SHU for creating a disturbance and failing to comply with a direct order in violation of DOCCS rules.  <u>See</u> Dkt. No. 12-2 at 68.  Indeed, Lt. Walawender's and Sgt. Seymour's uncontested sworn declarations corroborate C.O. Stanton's misbehavior report.  <u>See</u> Dkt. No. 84-8 at 2 ¶¶ 6-13, 3 ¶¶ 16-19; Dkt. No. 84-9 at 2 ¶¶ 9-11.  Moreover, defendants' evidence establishes that no causal nexus exists between his placement in SHU on April 5, 2018, and his PREA complaint against C.O. Stanton.  As Lt. Walawender and Sgt. Seymour declare, neither defendant knew of plaintiff's PREA complaint prior to April 5, 2018.  <u>See</u> Dkt. No. 84-8 at 4 ¶ 20; Dkt. No. 84-9 at 2 ¶ 11; <u>Henson</u>, 2015 WL 9809874, at *12-13.  In addition, plaintiff testified at his deposition that he "kn[e]w for a fact that [Sgt. Seymour] didn't know" about plaintiff's PREA

complaint against C.O. Stanton before plaintiff showed him the letter from Effman on April 5, 2018, Dkt. No. 84-1 at 403; that Lt. Walawender, Sgt. Seymour, and C.O. Corey, had no basis to retaliate against him; and that plaintiff had not even seen any of these defendants prior to April 5, 2018.  See id. at 402, 404-05.  Thus, it is recommended that plaintiff's First Amendment retaliation claims against Lt. Walawender, Sgt. Seymour, and C.O. Corey be dismissed.

### 5. C.O. Stanton and C.O. Cashin

As discussed above in subsection III.D.4, supra, plaintiff's First Amendment retaliation claim against C.O. Stanton for purportedly filing a false misbehavior report is belied by the record evidence, including the sworn declarations of Lt. Walawender and Sgt. Seymour, which corroborate all of the charges contained in her April 5, 2018 misbehavior report.  Indeed, regardless of any retaliatory animus C.O. Stanton may have held against plaintiff because of his PREA complaint against her, admissible evidence establishes that she issued plaintiff the April 5, 2018 misbehavior report for the non-retaliatory and legitimate reasons of plaintiff's failure to comply with a direct order and creating a disturbance in violation of DOCCS rules.  See Dkt. No. 84-8 at 2 ¶¶ 6-13, 3 ¶¶ 16-19; Dkt. No. 84-9 at 2 ¶¶ 9-11.  Moreover, C.O. Stanton has attached a copy of the disciplinary hearing disposition finding plaintiff guilty of both charges, see Dkt. No. 84-11 at 11, which the Cayuga CF Superintendent later affirmed on administrative appeal.  See id. at 17.  Thus, plaintiff was found to have "committed . . . all[] of the prohibited conducted charged in the misbehavior report."  Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998).  Accordingly, defendants have met their burden of establishing

that C.O. Stanton's misbehavior report would have been issued regardless of any retaliatory animus she held against plaintiff, which is sufficient to avoid liability on plaintiff's retaliation claim.  See Scott, 344 F.3d at 287-88; Brooks, 2014 WL 1292232, at *18.  Plaintiff's conclusory assertions to the contrary are insufficient to create a genuine issue of fact to defeat defendants' prima facie entitlement to summary judgment on his First Amendment claim against C.O. Stanton.  See Kerzer, 156 F.3d at 400.  Similarly, defendants have established that C.O. Cashin issued his April 6, 2018 misbehavior report against for legitimate reasons regardless of any retaliatory animus he may have held against plaintiff through the admissible evidence of the disciplinary hearing disposition finding plaintiff guilty of all three charges contained therein.  See Dkt. No. 84-5 at 9; Hynes, 143 F.3d at 657; see Scott, 344 F.3d at 287-88; Brooks, 2014 WL 1292232, at *18.  Based on the foregoing, it is recommended that plaintiff's First Amendment retaliation claims against C.O. Stanton and C.O. Cashin be dismissed.

In sum, it is recommended that plaintiff's First Amendment retaliation claims be dismissed as abandoned for plaintiff's failure respond to defendants' motion. Alternatively, it is recommended that plaintiff's First Amendment retaliation claims be dismissed for failure to exhaust administrative remedies.  In the event that the Court disagrees with the foregoing recommendations, it is recommended that plaintiff's defendants' motion for summary judgment in this regard be granted and plaintiff's First Amendment retaliation claims be dismissed on the merits.  In light of the foregoing, the undersigned declines to reach defendants' additional alternative arguments.

## IV. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment (Dkt. No. 84), be **GRANTED** to the extent that it seeks dismissal of plaintiff's First Amendment retaliation claims against defendants Lt. Walawender, Sgt. DeGraff, Sgt. Smith, Sgt. Seymour, C.O. Stanton, C.O. Cashin, C.O. Corey, C.O. Payne, C.O. Withers, and Nurse Randolph, and that those claims be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED**, that that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[10]


Dated: November 9, 2020
Albany, New York


Christian F. Hummel
U.S. Magistrate Judge

_____

[10]  If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).